1  UTZURRUM LAW OFFICES, A.P.C.
   Joe Utzurrum, Esq. CBN 171701
2  12121 Wilshire Boulevard, Suite 810
   Los Angeles, California 90025
3  Tele 310.887.1837
4  Email joe@ulawoffices.com

5  Attorneys for Plaintiff, DANETTE
   TUNSTALL
6

7

8

9              UNITED STATES DISTRICT COURT
10      CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

11 | DANETTE TUNSTALL,              ) Case No.:
12 |            Plaintiff,          )
   |                                ) COMPLAINT AND DEMAND FOR
13 |     vs.                        ) JURY TRIAL
   |                                )
14 | MCNIB CORPORATION and          ) Federal Question Jurisdiction 28
15 | MCDONALD'S CORPORATION         ) U.S.C. §1931
   |                                )
16 |            Defendants.         ) Trial Date: TBD
   |                                ) Trial Time: TBD
17 |                                )
   |                                ) <u>Claims for Relief</u>
18 |                                )
   |                                ) (1)  Race Discrimination 42
19 |                                )      U.S.C. §1981 (Equal Rights
   |                                )      Under the Law)
20 |                                ) (2)  Defamation
   |                                ) (3)  Violation of Unruh Civil Rights
21 |                                )      Act *Civil Code* §51
   |                                ) (4)  Intentional Infliction of
22 |                                )      Emotional Distress
23 |                                ) (5)  Negligence
   |                                )
24 |                                )

25      Plaintiff, DANETTE TUNSTALL (**Tunstall** or **Plaintiff**), hereby and
26 through her attorney of record, allege as follows:

27              **I. <u>JURISDICTION AND VENUE</u>**

28  1.   This court has original jurisdiction under 28 U.S.C. §1331, because

plaintiff's claim arises under 42 U.S.C. §1981.

2. This court has supplemental jurisdiction over the transactionally related state court claims pursuant to 28 U.S.C. §1367, because plaintiff's state law claims arise from a common nucleus of operative facts as the federal court claims such that plaintiff would ordinarily be expected to try them all in a single judicial proceeding.

3. Venue is proper in this court as the wrongdoing of which plaintiff bases his claims occurred in Irvine, California and venue arises under 28 U.S.C. §1391(b).

## II.  PARTIES

4. Defendant, MCNIB CORPORATION (**McNib**), is, and was at all relevant times, a corporation incorporated under the laws of the State of California having its principal place of business in the State of California and is a citizen only of the State of California. 11758

5. On information and belief, McNib does business at the involved restaurant located at 5445 Alton Parkway, Irvine, California 92614 and is believed to operate such restaurant under a fictitious business name "McDonald's #803".

6. Defendant, McDonald's Corporation (**McDonald's**), is, and was at all relevant times, a corporation incorporated under the laws of the Delaware, having its executive offices in the State of Illinois in the State and as such is a citizen of the States of Delaware and Illinois.

7. Collectively, McNib and McDonald's are **McDonalds, Defendants**, or **Defendants**.

8. Plaintiff, DANETTE TUNSTALL (**Ms. Tunstall**) is, and was, at all times relevant, domiciled in the County of Orange, California and thus a citizen of the State of California. Tunstall is African American.

### III. FACTS COMMON TO ALL CAUSES OF ACTION

9. On the evening of May 27, 2022, Ms. Tunstall, an elderly and African American woman, was working as a caregiver.

10. Ms. Tunstall, returned to the above reference McDonald's location, specifically, 5445 Alton Parkway, Irvine, California 92614 (**McDonald's Restaurant**), to receive an order or a refund that was not correctly prepared by the McDonald's Restaurant on a prior day.

11. The McDonald's Restaurant was a restaurant that Ms. Tunstall frequented because it was at a location near the place of her employment. In fact, it was on almost every Friday that she would visit McDonald's Restaurant.

12. Prior to May 27, 2022, Ms. Tunstall spoke to a person who indicated to Ms. Tunstall that he or she was management at the McDonald's Restaurant. Ms. Tunstall informed such person that she needed to receive her correct order that she had paid for on the prior visit, since what was given to her on the prior visit was not the order she had requested and paid for. The person informed her that she could do so or receive a refund.

13. On May 27, 2022, Ms. Tunstall was in the drive-thru at the McDonald's Restaurant and after waiting for her turn indicated to the defendants' agent her request for a refund and presented a receipt. Ms. Tunstall further explained the circumstance under which she required a refund and that such refund was approved of by defendants' management.

14. Defendants' managers and employees were fully aware that my client was entitled to receive her requested order or the return of the money she paid, and did see a receipt issued by defendants for the prior transection.

15. Ms. Tunstall received neither her order nor her money back. Instead,

McDonalds' representatives notified law enforcement that Ms. Tunstall was committing a serious crime involving violence and/or threats of violence. In fact, the crime reported by McDonald's to law enforcement was so severe that Irvine Police Department dispatched at least three units to the McDonald's location and detained Ms. Tunstall for one hour.

16. Ms. Tunstall was merely waiting patiently in the drive-thru line after getting off from her job as a healthcare worker across the street.

17. Ms. Tunstall was absolutely humiliated and devasted when she was pulled out of the line and detained Irvine Police Department.

18. Ms. Tunstall, an elderly person, endured great stress as she worried about whether or not her employer, coworkers and patients witnessed law enforcement conduct a crime investigation at a restaurant parking lot that Ms. Tunstall frequently visits was in close proximity to her place of employment.

19. Not a scintilla of evidence exists, existed, that Ms. Tunstall committed any crime and that any basis existed that established probable cause that a crime was committed by Ms. Tunstall. She neither threatened nor posed a threat to any McDonalds agent or customer.

20. Randomly, a McDonalds' manager called Ms. Tunstall the next day offering what appeared be a threat to not push the matter further with McDonalds' or pursue any law enforcement action.

21. The incident would not have occurred but for Ms. Tunstall race.

22. Ms. Tunstall has not visited the McDonald's Restaurant since May 27, 2022, in part, because of the fear that she will have the same frightening and humiliating experience.

23. Since May 27, 2022, Ms. Tunstall has experienced a continuing sense

of humiliation and severe emotional distress, including sleepless nights, extreme anxiety, an upset digestive system, paranoia about and mistrust with law enforcement and more importantly a decreased sense of self-worth, especially exacerbated because Ms. Tunstall was, and is, elderly, albeit a law abiding United States Citizen.

24. The conduct of McNib, McDonald's and their agents and employees was unreasonable, arbitrary and invidious and intended to emphasize irrelevant differences between Ms. Tunstall's race, color, ancestry and national origin to perpetuate irrational stereotypes about African Americans or those who originate from Africa as individuals who are criminals and inherently pose a threat to others.

25. Plaintiff has been deterred from using restaurants like that of defendants as a result of the discriminatory conduct and practices of defendants, their agents and their employees described above and has limited Ms. Tunstall's interstate and intrastate travel

## I. **FIRST CLAIM**

(Race Discrimination 42 U.S.C. §1981 – Equal Rights Under the Law – Against McNib and McDonald's)

26. Plaintiff incorporates by reference paragraphs 1 through 25 as though fully set forth herein

27. 42 U.S.C. §1981 provides:

> (a) Statement of Equal Rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> (b) "Make and Enforce Contracts" Defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection Against Impairment
>
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

28. A contract was created between plaintiff and defendants that provided that plaintiff would pay money to defendants for food. The terms and conditions of the contract were drafted by Defendants in a menu and provided for certain obligations, rights and performances by Ms. Tunstall, on the one side, and Defendants, its agents and employees on the other side.

29. The implied and express contract provided that plaintiff would not be harassed or annoyed and would otherwise be free from vexatious conduct either directly initiated by defendants, its agents and employees and/or indirectly, however initiated by defendants, its agents and employees, including not to summon law enforcement be subjected to a lengthy detention when asking for a refund.

30. The conduct of Defendants, its agents and employees were intended to and did cause the detention, search, and harassment of Ms. Tunstall, by, among other things, Defendants, its agents and employees using law enforcement to unnecessarily search, detain and harass and thereby humiliate an elderly African American United States Citizen, where no probable cause under any circumstance existed to detain, search, and

harass and thereby humiliate the elderly African American United States Citizen.

31. The conduct of Defendants, its agents and employees were intended to and did cause the impairment in the performance of, and the enjoyment of, all benefits, privileges, terms, and conditions of the contractual relationship between plaintiff, on the one side, and Defendants and its agents on the other side and has deterred plaintiff of engaging in further similar contracts.

WHEREFORE, plaintiff prays for judgment as set forth below.

## II. SECOND CLAIM

(Defamation – Against all Defendants)

32. Plaintiff incorporates by reference paragraphs 1 through 31 as though fully set forth herein.

33. Defendants did call law enforcement and did make a false report that Ms. Tunstall committed or was in the process of committing a threatening or violent crime, and otherwise was breaking the law.

34. Irvine PD rolled in with three SUV's expecting that a serious crime was being committed or was committed. Defendants' false report was especially threatening and dangerous, since Ms. Tunstall is African American. Lately there have been many widely publicized incidents in the United States of violence where excessive force has been committed by law enforcement against African American criminal suspects. At times such law enforcement have been depicted to be more ready to use violence when making calls that involve African Americans. The environment has caused, African American's, including Ms. Tunstall, to be on high alert when contacted by law enforcement.

35. Defendants expected this type of fear to be instilled in Ms. Tunstall when making their false report. This type of fear was actually experienced by Ms. Tunstall.

36. In making the false report defendant violated *Civil Code* §47(b)(5).

37. The false report was intentionally made or with reckless disregard for the truth.

38. Ms. Tunstall was merely attempting to get a refund from defendants for the incorrect order that she received from defendants on a prior occasion.

39. Defendants' reputation was damaged as result of the false report and she sustained damages including emotional distress.

WHEREFORE, plaintiff prays for judgment as set forth below.

### III. THIRD CLAIM

(Violation of Unruh Civil Rights Act - *Civil Code* §51– Against all Defendants)

40. Plaintiff incorporates by reference paragraphs 1 through 39 as though fully set forth herein.

41. The Unruh Civil Rights Act, *Civil* Code §51, guarantees every person in California "full and equal" access to "all business establishments of every kind whatsoever" and imposes a duty on business establishments to serve all persons without arbitrary discrimination, including common carriers such as defendants.

42. Plaintiff is a member of a protected class of which the Unruh Civil Rights Act was enacted to protect, specifically plaintiff is, and was, African American and elderly.

43. Defendants' acts were discriminatory in nature wherein defendants singled out Ms. Tunstall and otherwise subjected Ms. Tunstall to unequal treatment, because Ms. Tunstall is, and was, and elderly person and African American appearing to be of African descent. Ms. Tunstall was singled out and subjected to unequal detrimental treatment by defendants, because of her race, color, ancestry and national origin.

44. The acts of Irvine PD were expected, and as conduits of defendants'

1 unlawful, discriminatory and racially charged animus, severely invaded,
2 infringed and undermined Ms. Tunstall's right to be free from others touching
3 her person, free from searching her personal effects and not being humiliated
4 in public, in essence being treated civilly.

45. Defendants' conduct was intended to and did severely invade Ms. Tunstall's right to be free from others touching her person, free from searching her personal effects and not being humiliated in public, in essence being treated civilly, because Irvine PD, as expected, did conduct an unwarranted touching and search of Ms. Tunstall's person and her personal effects and Ms. Tunstall was indeed humiliated.

46. Defendants used the authority of the Irvine PD to have Ms. Tunstall unlawfully searched in her person and personal effects and to have Ms. Tunstall be humiliated in public, since there were no objective facts that would provide the basis for a lawful search of either Ms. Tunstall's person and his personal effects, and thereby absolutely no lawful cause to humiliate Ms. Tunstall on a filled at the McDonald's Restaurant drive-thru.

47. Plaintiff was thereby denied of the privilege to be free of the oppressive discriminatory conduct and harassment of defendants, its agents and employees, a privilege guaranteed to plaintiff by the United States Constitution, the California State Constitution and other federal and state laws.

WHEREFORE, plaintiff prays for judgment as set forth below.

### IV. FOURTH CLAIM

(Intentional Infliction of Emotional Distress – Against all defendants)

48. Plaintiff incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

49. Defendants' conduct was outrageous and so extreme as to go beyond all bounds of decency tolerated by society, because defendants'

1 conduct was racist and otherwise discriminatory in nature.

50. Defendants knew that Ms. Tunstall was a senior citizen, because, among other things, Ms. Tunstall had, and has, the appearance of an elderly person, in this case Ms. Tunstall appeared to be elderly. As such, defendants knew that Ms. Tunstall was more susceptible to emotional distress and less tolerant to the type and manner of conduct as those perpetrated by defendants, because the susceptibility to such emotional distress is common with persons who are elderly.

51. Defendants had knowledge of the power and control defendants had over persons similarly situated as Ms. Tunstall in determining how defendant could determine the emotional fate of an elderly African American woman, that is to say, defendants were fully aware of the susceptibility to emotional distress and emotional havoc defendants would probably cause in harassing Ms. Tunstall in the manner that defendants perpetrated.

52. Defendants' conduct was intentional and otherwise at the minimum, carried out in reckless disregard.

53. Ms. Tunstall sustained severe and enduring emotional distress and was to such an extent that no reasonable person in a civilized society should be expected to endure the distress.

WHEREFORE, plaintiff prays for judgment as set forth below.

## V.  FIFTH CLAIM

(Negligence – Against all defendants)

54. Plaintiff incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

55. Defendants owed a duty of utmost and great care to plaintiff, because plaintiff was one of its customers in their drive-thru.

56. Defendants breached the duty when defendants failed to exercise a

reasonable degree of care and attention in treating Ms. Tunstall with civility and in summoning law enforcement were aware of the likelihood of the detention by law enforcement, especially in making the false report, that would cause Irvine PD to believe that Ms. Tunstall was a dangerous threat and act in a manner in accordance therewith.

57. Defendants' conduct was intended to and did severely invade Ms. Tunstall's right to be free from others touching his person, searching her personal effects and being humiliated in public, because law enforcement did conduct an unwarranted touching and search of Ms. Tunstall's person and her personal effects and Ms. Tunstall was indeed humiliated.

WHEREFORE, plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

Plaintiff, Ms. Tunstall, prays as to its First through Fifth Claims:

1. For judgment, interest and cost of the suit;
2. For compensatory damages in the amount of $500,000.00;
3. For prejudgment interest;
4. For statutory damages;
5. For attorney's fees;
6. Punitive damages in the amount of $1,500,000.00;
7. For such other relief as the court may deem just, proper and equitable.

Dated: May 30, 2023         UTZURRUM LAW OFFICES, A.P.C.

By: /s/ Joe Utzurrum, Esq.
Joe Utzurrum, Attorney for plaintiff,
DANETTE TUNSTALL

## **DEMAND FOR JURY TRIAL**

Plaintiff, DANETTE TUNSTALL, herein demands that the causes of action herein set forth be tried in front of a jury.

Dated: May 30, 2023          UTZURRUM LAW OFFICES, A.P.C.


By: /s/ Joe Utzurrum, Esq.
Joe Utzurrum, Attorney for plaintiff,
DANETTE TUNSTALL